```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF SOUTH DAKOTA
```

| | |
|---|---|
| In re: | ) Bankr. No. 04-50299 |
| | ) Chapter 7 |
| BILLY LEE HORN | ) |
| Soc. Sec. No. XXX-XX-8817 | ) |
| | ) |
| Debtor. | ) |
| | ) |
| JEFF D. ROLLER | ) Adv. No. 04-5015 |
| Plaintiff, | ) |
| | ) DECISION RE: |
| -vs- | ) CROSS MOTIONS |
| | ) FOR SUMMARY JUDGMENT |
| BILLY LEE HORN | ) |
| Defendant. | ) |

The matters before the Court are the cross Motions for Summary Judgment filed by Plaintiff Jeff D. Roller and Defendant-Debtor Billy L. Horn. These are core proceedings under 28 U.S.C. § 157(b)(2). This Decision and accompanying Order and Judgment shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, Plaintiff's motion will be granted and Defendant-Debtor's will be denied.

I.

Bill Lee Horn ("Debtor") filed a Chapter 7 petition in bankruptcy on June 1, 2004. He stated in his schedules that he owned minimal personal property valued at $2,724.00 and did not own any real property. For claims against him, he scheduled only unsecured claims totaling $569,651.54.[1] Debtor stated his monthly income was only $819 from Social Security for a disability (he also

---

[1] This sum includes unsecured claims added by Debtor's amendment to his schedules on October 14, 2004.

acknowledged that his "roommate" had income of $1,217.33). Debtor stated his and his roommate's monthly expenses were $1,700.61.

In his Statement of Financial Affairs, Debtor stated he received income of $40,000.00 from "Magne Store (advance)" in 2002. He also listed Magne Store as his source of income for 2003 and 2004 year-to-date, but he said his income for both those years was "-0-." He disclosed Social Security income for 2002, 2003, and 2004 year to date. He also disclosed an interest in three legal entities: "Magna Socket Holders, Inc.," "Magne Store, LLC," and "Magnetic Organizers, Inc." Each was said to be located on Goodrich Avenue in St. Paul, Minnesota. All three were said to have begun January 1, 2002, and ended February 27, 2004.

Debtor made only three other disclosures in his Statement of Financial Affairs. He said a tool box, CD player, and some CDs valued at $650 were stolen on December 1, 2003; he said he paid his bankruptcy attorney $1,000 on December 9, 2003; and he said he has possession of a 1994 Ford Van owned by Jean Layton.

On August 30, 2004, Jeff D. Roller, appearing *pro se*, sent a letter to the case trustee, who forwarded it to the Court.[2] The letter contained several allegations of wrongdoing by Debtor. On

---

[2] Initially, it appeared the letter was submitted by Roller on behalf of Associated Design, Inc. Roller subsequently clarified that he had no affiliation with Associated Design, Inc., and that the letter was only from him personally.

September 2, 2004, the Court advised Roller the letter had been docketed as a complaint seeking a denial of Debtor's discharge. The Court also directed him to file an amended complaint that better comported with the Federal Rules of Bankruptcy Procedure and pay the adversary filing fee.

Roller amended his complaint on September 24, 2004. He said he and Curtis L. Taylor were former investors in companies Debtor had formed for the purpose of manufacturing certain products for which Debtor held a patent and they jointly held a judgment against Debtor for $62,500.00 plus interest. Roller alleged Debtor had misstated on his schedules the nature and value of Debtor's interest in these manufacturing companies; Debtor had fraudulently transferred personal property, including patents, between the companies in order to defraud or hinder creditors; Debtor had failed to schedule and appropriately value the patents Debtor holds for the "design of magnetic devises for holding cylindrical socket heads"; Debtor may have transferred the patents to one of the business entities in an attempt to defraud creditors; and information on question 18 of Debtor's Statement of Financial Affairs (regarding business interests) was inaccurate. Roller further stated,

> [Debtor] has obtained, over several years, hundreds of thousands of dollars in investor money and has acquired thousands of dollars of supplies, equipment, machinery and product. However, [Debtor] has represented the value

of his interest in one Limited Liability Company at not more than $1,149.00. [Debtor] has failed to satisfactorily explain the loss of assets and deficiency of assets to meet his liabilities.

Debtor answered Roller's Amended Complaint on October 19, 2004. He acknowledged that Roller and Taylor had a judgment against him and also against Magnetic Socket Holders, Inc. He said Roller and Taylor were not former investors but were shareholders in Magnetic Socket Holders, Inc. Debtor also stated:

> As and for a separate affirmative defense, this Defendant alleges that any assets of the company known as Magnetic Socket Holders, Inc. are currently in storage, have insignificant value, and are subject to a Federal Tax Lien dated August 25, 1997 by the Internal Revenue Service (a copy of which is attached hereto as exhibit "B" and incorporated by reference) which lien is in an amount well in excess of any value the assets had or may have. In addition, the assets whereabouts have been and are known to the Plaintiff and the Plaintiff has been told on several occasions to do something with the assets, however Plaintiff and Curtis L Taylor have taken no action in the past years to salvage the property or to provide for its safekeeping or to provide for the satisfaction of the tax lien. Plaintiff and Curtis L. Taylor were advised of the Federal Tax Lien by letter from Attorney Joseph Butler dated January 13, 2000 and in said letter Mr. Butler advised that the assets were part of the company, were subject to the tax lien and the assets were offered to the Plaintiff, who voluntarily choose not to do anything with them. In addition, the company known as Magnetic Socket Holders, Inc. was administratively dissolved by the South Dakota Secretary of State on September 13, 2000. See exhibit "C" attached hereto and incorporated herein by reference.

On November 17, 2004, Debtor amended his Statement of Financial Affairs, question 18, regarding "Nature, location and name of business" to state Magna Socket Holders, Inc., had a "past" post office box address in Rapid City, South Dakota; it was "Administratively dissolved on September 13, 2000"; and the nature of its business was "Manufacturing and sale of magnetic socket holders." He also stated Magnetic Organizers, Inc., had a "past" address on Sheridan Lake Road in Rapid City, South Dakota; it had

-5-

never applied for an "ID#" [presumably a tax identification number]; it was formed for the same or similar purpose as Magna Socket Holders, Inc., but "[n]ever began business"; and it was "Administratively dissolved on September 24, 2001." Debtor also amended this portion of his Statement of Financial Affairs to clarify that Magne Store, L.L.C., is an active company that "is authorized to engage in any lawful activities as the Board of Governors may determine from time to time. Currently engaged in the marketing of magnetic tool holders."

On November 17, 2004, Debtor also amended his schedule of personal property. He deleted "Old office equipment of Magnetic Org., Inc. (appraised value)" with a value of $150.00. He also added the following:

> Debtor was a former stockholder in Magna Socket Holders, Inc. and Magentic Organizer, Inc. Magnetic Organizer, Inc. was administratively dissolved on September 24, 2001.
>
> Magna Socket Holders, Inc. was administratively dissolved on September 13, 2000 and has assets appraised in October, 2000 for $822.00, which are subject to a Federal Tax Lien in the amount of $9909.69 as of August 27, 1997. The assets consist of office furniture and equipment, magnets, plastic trays, packaging materials, shelving materials, etc. which are in storage at 1501 Centre Street, Rapid City, South Dakota.

> In addition, there are two (2) magnetizers at 2130
> Dyess Avenue, Rapid City, South Dakota, one mold
> in Aberdeen, South Dakota, and two molds in
> Hospars, Iowa. All of these assets are subject to the
> Federal Tax Lien, storage liens, and, in the
> estimation of the Debtor, have little or no value.
>
> The interest of the Debtor in these now defunct
> companies is nill.                                              $0.00

There has been no further significant activity in Debtor's main case.

In the adversary proceeding, the parties were directed to complete discovery and file dispositive motions by March 16, 2005, which included one extension. Roller timely moved for summary judgment on March 16, 2005, and the Court set a response and briefing schedule. Debtor filed a cross motion for summary judgment out of time on April 29, 2005.

In his motion, responses to Debtor's motion, and briefs, Roller argued Debtor's discharge should be denied because Debtor had undervalued his 35% interest in Magne Store, L.L.C., which Roller described as an active company that generated gross sales of $172,193.00 in 2004. Roller also argued Debtor's discharge should be denied because Debtor had not disclosed Debtor's agreement with Magne Store to recover his patents, valued at $14,000, if Magne Store was not profitable.

Roller further argued Debtor failed to disclose monthly income of $2,000 and property owned by Magna Socket Holders, Inc., which

Debtor controlled and had placed in storage. Roller valued this stored property at over $100,000 at the time it was originally purchased.

In his Motion for Summary Judgment, affidavit, responses to Roller's motion, and briefs, Debtor countered, giving his history of Magna Socket Holders, Inc., Magnetic Organizers, Inc., and Magne Store, L.L.C. He acknowledged that he presently owns a 35% interest in Magne Store, which he acquired by giving his patents to the entity, and that he received income of $4,000 per month for ten months in royalties beginning in early 2002. However, he stated he has not received anything since because the Magne Store is not pursuing marketing leads and is, therefore, not earning him any money. He also stated his present relationship with the majority owner of Magne Store is adversarial.

Debtor acknowledged he has an agreement with Magne Store to get his patents back, but he said the unlikeliness of the necessary conditions occurring render that agreement valueless. He also acknowledged saying in his deposition that he may have earned "outside" income selling health equipment for a friend. However, he explained he actually earned that "outside" income, amounting to $2,000, in 2004, after the petition date, and 2005.

II.

*Summary judgment*. The parties do not significantly dispute

the applicable law for summary judgment.[3]  Where cross motions have

---

[3] As this Court has recently held,

> [s]ummary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992)(quotes therein). A genuine issue of fact is *material* if it might affect the outcome of the case. *Id.* (quotes therein).
>
> The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Circ. 1992)(quoting therein *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and citations therein). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet*, 972 F.2d at 1490 (citation omitted).
>
> The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out that part of the record that bears out his assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant v. Associated Electric Coop*, 838 F.2d 268, 273, (8th Cir. 1988). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.
>
> If the movant meets his burden, however, the non movant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The non movant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT,*

been filed, as in this case, the Court does not presume there are no material facts in dispute, nor do the cross motions have the effect of the matter being submitted for plenary determination. *Wermager v. Cormorant Township Board*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead,

> [a] party may concede that there is no issue [of fact] if his legal theory is accepted and yet maintain that there is a genuine dispute as to material facts if his opponent's theory is adopted. Thus, both motions should be denied if the court finds that there is actually a genuine issue as to a material fact. If both parties move for summary judgment, each concedes and affirms only that there is no issue of fact only for purposes of his own motion.

FEDERAL PRACTICE AND PROCEDURE, Rules Edition, § 1239, pp. 176-77 (quoted in *Allied Mutual Insurance Co. v. Lysne*, 324 F.2d 290, 292 (8th Cir. 1963)).

*Denial of discharge.* A Chapter 7 debtor is not entitled to a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A).[4] "Statements made in schedules are signed under penalties of perjury and have 'the force and effect of

---

Inc. v. TCBY System, Inc., 52 F.3d 734, 737 (8th Cir. 1995).

*In re Donald A. Hausle*, Bankr. No. 04-50015, slip op. at 2-3 (Bankr. D.S.D. June 10, 2004).

[4] Roller's motion for summary judgment focused on § 727(a)(4) [of which only subsection (a)(4)(A) is applicable] although his Amended Complaint also cited §§ 727(a)(2)(A), (a)(3), and (a)(5).

oaths[.]'" *Korte v. Internal Revenue Service (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)(quoting *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989,992 (Bankr. E.D. Ark. 1993)(cite therein)).

For a false oath to bar a debtor's discharge, it must be both material and made with intent. *Korte*, 262 B.R. at 474 (citing, inter alia, *Mertz v. Rott (In re Mertz)*, 955 F.2d 596, 598 (8th Cir. 1992); *Palatine National Bank v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1990)). The threshold for materiality is low. *Korte*, 262 B.R. at 474 (cites therein)(cited with approval in *Jordan v. Bren (In re Bren)*, 122 Fed. Appx. 285, 286 (8th Cir. 2005)). A statement is material

> if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [the debtor's] property.

*Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)(cite therein)(cited with approval in *Mertz*, 955 F.2d at 598, and *Olson*, 916 F.2d at 484).

As for intent, since a debtor will rarely, if ever, admit he intended to deceive his creditors, "[i]ntent 'can be established by circumstantial evidence,' and 'statements made with reckless indifference to the truth are regarded as intentionally false.'" *Korte*, 262 B.R. at 474 (quoting *Smith*, 161 B.R. at 992 (cite

therein))(cited in *Bren*, 122 Fed. Appx. at 286). *See also Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 686 (6th Cir. 2000)("A reckless disregard as to whether a representation is true will also satisfy the intent requirement."); *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)("[N]ot caring whether some representation is true or false . . . is . . . the equivalent of knowing that the representation is false and material."). Further,

> [w]here the debtor has engaged in a pattern of omissions or committed numerous inaccuracies a presumption may be made that the debtor acted with fraudulent intent or acted with such reckless disregard for the truth as to be equivalent of fraud.

*Spencer v. Hatton (In re Hatton)*, 204 B.R. 470, 475 (Bankr. E.D. Va. 1996)(citation omitted).

> The Debtor had an excuse as to each falsely answered question; either he didn't understand that the item had to be included since it was primarily the obligation of another or was of no real value to his estate.
>
> Individually, any one answer may have been the result of an innocent mistake. However, the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).

*Guardian Industrial Products, Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)(cite therein). *See Bren*, 122 Fed. Appx. at 288 ("It is reckless - perhaps even willful - to persist in . . . a high degree of ignorance about one's financial affairs during and after bankruptcy."); *Camacho v. Martin (In re*

*Martin)*, 88 B.R. 319, 324 (D. Co. 1988)(a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge")(quoting therein *Diodati*, 9 B.R. at 808)(cited in *Bren*, 122 Fed. Appx. at 288-89).

The party bringing a denial of discharge complaint has the burden of proof by a preponderance of evidence. *Farouki v. Emirates Bank International Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994)(cited in *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 348 (B.A.P. 8th Cir. 2000)). Once the complainant has made a *prima facie* case, the burden may shift to the debtor to provide satisfactory, explanatory evidence. *Farouki*, 14 F.3d at 249. The ultimate burden rests with the complainant. *Ibid.*

III.

The record is clear that Debtor's original Statement of Financial Affairs, at question 18, was inaccurate in several respects, including the starting and ending date of each business in which Debtor has held an interest, their addresses, and their taxpayer identification number. Even on its face, his answer to question 18 was implausible since Debtor listed the same taxpayer identification number for all three entities. These inaccuracies were clearly material because they bore a relationship to Debtor's

business dealings. *Chalik*, 748 F.2d at 618(cite therein)(cited with approval in *Mertz*, 955 F.2d at 598, and *Olson*, 916 F.3d at 484). In particular, by listing an incorrect "ending date" for Magne Store, Debtor failed to acknowledge that Magne Store was an active legal entity in which he still had a substantial interest. This was a significant inaccuracy that could mislead the case trustee in his quest for estate assets.

The record is also clear that Debtor did not disclose in his original schedule of personal property (Schedule B) that he had an option with Magne Store to recover his patents upon the occurrence of certain conditions. Whatever the remoteness of the requisite conditions occurring and whatever the value of that option may be, Debtor was obligated to disclose it. Though he stated on his schedule of personal property that he had assigned the patents to Magne Store (which actually was an acknowledgment of a transfer, not the disclosure of an asset), to date Debtor still has not scheduled as an asset his conditional right to have the patents returned. This, too, was a material inaccuracy because it also bore a relationship to Debtor's business dealings.

The magnitude of these errors on his Statement of Financial Affairs and Schedule B alone demonstrates Debtor's reckless disregard for the truthfulness and importance of his answers on these required documents. The correct information was readily

-14-

available to Debtor at the time he filed the documents; he was not dependent on others to provide him with accurate information. Debtor's reckless intent is amplified by the fact he did not amend his answer to question 18 on his Statement of Financial Affairs or his Schedule B until after Roller filed his denial of discharge complaint, which was more than four months after Debtor filed his petition. If the misstatements had been mere oversights or scrivener's errors, they could and should have been corrected much sooner.[5]

The present record[6] sets forth a *prima facie* case for a denial

---

[5] In an affidavit filed April 28, 2005, Debtor stated, "In the amendments to the schedules that I signed I stated that this company never began business. I meant that the company never began the production or sales of the metal socket holders, which was the purpose for which it was formed. This was a misunderstanding with counsel. There were a small amount of sales during this time and after the company was administratively dissolved, which money was used to pay some costs, but not enough to keep going." Debtor has not filed another amendment to correct this error in his November 17, 2004, amendment.

[6] The present record is not sufficient for the Court to conclude that Debtor has undervalued his interest in Magne Store or the agreement with Magne Store regarding the patents. A trial would be necessary to determine whether Debtor in fact misstated these values and did so with the requisite fraudulent or reckless intent. Likewise, the present record is not sufficient for the Court to conclude that Debtor has understated his present income. It is not clear when Debtor began selling health equipment and when he first earned money with that endeavor.

In his April 29, 2005, brief, Debtor stated that the instructions on Schedule B provide, "[v]alue is not the same as the purchase price; rather it usually is a fraction of that." The Court notes that this statement is not a part of the official form;

-15-

of Debtor's discharge under § 727(a)(4)(A), thus shifting the burden to Debtor to show the present record also provides satisfactory explanatory evidence why his original Statement of Financial Affairs and Schedule B contained the errors discussed above and why he did not more timely correct these errors. *Farouki*, 14 F.3d at 249. The record contains no such satisfactory explanatory evidence. *Compare Holway v. Van Leuven*, Civ. 04-5017-KES, slip op at 4-6 (D.S.D. Sept. 9, 2004)(summary judgment is not appropriate on a discharge complaint where the defendant-debtor offers evidence to dispute his intent to deceive). Debtor did not discuss in his pleadings why the material errors on his original Statement of Financial Affairs, question 18, occurred. Further, while Debtor described his amendments to his schedules and Statement of Financial Affairs as "timely," he did not set forth any facts or law in support of that conclusion. As to his failure to schedule his contractual right to recover the patents under certain conditions, Debtor argued it was reasonable for him to conclude this option had "no real value." He also argued fraudulent intent cannot be inferred because the option was "sufficiently inexplicit, ambiguous and vague . . . particularly

---

it is included only in explanatory materials and instructions written by staff for the U.S. Court's Administrative Office. The Official Form instructs the debtor to list the **"Current Market Value** of Debtor's Interest in Property, Without Deducting Any Secured Claim" [emphasis added].

when [he] received no subsequent monetary consideration arising out of the omission." That argument ignores the law that a debtor is required to disclose all assets. 11 U.S.C. § 521(1) and Fed.R.Bankr.P. 1007(b). Whether an item of personalty or an intangible should be scheduled is not dependent on its value. *In re McKain*, ___ B.R. ___, 2005 WL 1484493 (Bankr. D. Neb. June 23, 2005).

> The Debtor is not to decide for himself the nature of his interest in property, the value of that property or the amount of his equity therein. Also, he is not to decide for himself which questions on the Statement of Affairs should be answered fully, completely and truthfully. The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary. This is for the creditors and the Court to decide.

*Morrel, West & Saffa, Inc. v. Riley (In re Riley)*, 128 B.R. 567, 569 (Bankr. N.D. Okla. 1991)(quoted in *McKain*, 2005 WL 1484493); see *Olson*, 916 F.2d at 484 (under § 727(a)(4)(A), the value of an item that was omitted from a schedule is not determinative of whether the omission was material). Accordingly, Roller's Motion for Summary Judgment will be granted.

When Debtor's Motion for Summary Judgment is considered, the record, when viewed in Roller's favor, does not support a finding that all of Roller's allegations are without merit. Instead, the record clearly shows that Debtor's Statement of Financial Affairs, question 18, and Debtor's Schedule B contained material errors and

that these errors were made with a reckless disregard as to whether the representations were true. His motion will be denied.

An appropriate order and judgment will be entered.

Dated this 8th day of July, 2005.

BY THE COURT:

Irvin N. Hoyt
Bankruptcy Judge

I hereby certify that a copy of this document was electronically transmitted, mailed, hand delivered or faxed this date to the parties on the attached service list.

JUL 0 8 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court, District of South Dakota
By_____

NOTICE OF ENTRY
Under F.R.Bankr.P. 9022(a)
Entered

JUL 0 8 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court
District of South Dakota

Stan H. Anker
1301 West Omaha Street, Suite 108
Rapid City, SD 57701


John H. Mairose
2640 Jackson Blvd. #3
Rapid City, SD 57702